REQUESTED BY: Douglas D. Christensen, Commissioner Nebraska Department of Education
You have requested an opinion from this office as to whether the Nebraska State Board of Education ["State Board"] may, in the absence of specific authorizing legislation, require that each prospective Nebraska teacher and student teacher be subjected to a criminal history background check prior to being certified to teach. We address, in turn, each of the specific questions which you have presented.
 1. Can the State Board adopt state regulations to require a criminal history check of prospective teachers and student teachers, absent more specific legislative authority?
The Nebraska Legislature has mandated that no person shall be employed to teach in Nebraska schools until he or she has been issued a valid certificate to teach by the Commissioner. Neb. Rev. Stat. § 79-1233 (1) (1994). The State Board has been directed by the Legislature to promulgate "appropriate rules, regulations, and procedures governing the issuance, renewal, conversion, revival, cancellation, suspension, and revocation of certificates and permits to teach . . . based upon [several factors, including] moral, mental, and physical fitness for teaching, all in accordance with sound educational practices." Neb. Rev. Stat. § 79-1247.05 (1994). The Nebraska Supreme Court has construed this statute as granting "broad powers to the State Board of Education to adopt rules and regulations governing the issuance of teaching certificates to be based upon . . . factors deemed to be important to a determination of fitness to teach." State ex rel. Douglas v.Faith Baptist Church, 207 Neb. 802, 808, 301 N.W.2d 571, 575
(1981). Pursuant to another statute, the State Board may require, among other standards, that one applying for the first issuance of any certificate be "of sound mental and physical health and of good moral character." Neb. Rev. Stat. § 79-1247.06 (1994); See also Informal Op. Att'y Gen. No. I95-004 (January 23, 1995) (discussing extent of State Board's ability to deny issuance of teaching certificate based upon certain criminal convictions).
With regard to the regulation of teachers who are currently certificate holders, one additional statute expressly provides that the State Board "may, for just cause, revoke or suspend any teacher's . . . certificate." Neb. Rev. Stat. § 79-1282 (2) (1994). "Violation of the standards established [under the statute], commission of an immoral act, or conviction of a felony under the laws of this state shall constitute just cause for the revocation or suspension of a teacher's . . . certificate by the [State Board]." Id.
In a prior opinion, we cited to the Nebraska Supreme Court's determination that "the method and manner of enforcing a law must of necessity be left to the reasonable discretion of administrative officers." Bartlett v. State Real EstateCommission, 188 Neb. 828, 831, 199 N.W.2d 709, 712 (1972); See Op. Att'y Gen. No. I95-004 at pp. 4-5 (discussing facts of Bartlett as applied to the State Board's licensing powers). We found applicable to the Nebraska Department of Education's licensing powers the court's pronouncement that "in the absence of mandatory statutory requirements, the power vested in an officer or board to grant licenses carries with it, expressly or impliedly, the power to exercise reasonable discretion in granting or refusing licenses." Bartlett, 188 Neb. at 832, 199 N.W.2d at 712.
Based upon these court interpretations and the constitutional framework upon which the State Board is founded,[1]
we find it within the reasonable discretion of the State Board to, by regulation, affirmatively investigate whether applicants for teaching licenses have been convicted of a felony or other acts involving moral turpitude by requiring that they submit to a criminal history background check. In reaching this conclusion, we deem it important for you to know that under the federal law requirements which govern the dissemination of criminal history information, a regulation issued by the State Board requiring potential teachers to submit to such a check might not accomplish its intended objective. Further explanation of our conclusion is set forth, below, in response to your third question.
 2. If so, may the State Board also charge the cost of the criminal check to the teacher or student teacher?
According to information supplied by the Nebraska State Patrol, the cost assessed to an agency for conducting a thorough criminal history information search is approximately $35.00. We note that the Legislature has provided that public school teaching certificates and permits shall be issued upon payment of a nonrefundable fee of $40.00 and that nonpublic school teaching permits shall be issued upon payment of a non-refundable fee of $30.00. Neb. Rev. Stat. § 79-1247.07 (1994). It is well-established that "[i]f a statute lays down general standards, the administrative agency may implement the statute by filling in the necessary details. But where . . . the statute in itself prescribes the exact procedure the administrative agency may not add to or subtract from such provision." School Dist. No. 8 v. State Boardof Education, 176 Neb. 722, 733-34, 127 N.W.2d 458 (1964). Based upon this rule of law, we find that the State Board of Education may not assess an applicant any fee in excess of the permit fees which have already been statutorily prescribed by the Legislature for issuance of a certificate to teach.
 3. Would the State Board be allowed access to the National Crime Information Center ["NCIC"] pursuant to a State Board regulation, without a specific statute allowing such access?
The State Board might not be granted access to the National Crime Information Center ["NCIC"] in the absence of specific authorizing legislation. The NCIC is the computerized information system linking local, state, and federal criminal justice agencies for the purpose of exchanging certain criminal history information. 28 C.F.R. § 20.31 (a) (1994). The Federal Bureau of Investigation is vested with authority for operation of the NCIC. Id. Regulations issued by the U.S. Department of Justice pursuant to 28 U.S.C. § 534 (1993 Supp. 1995) govern the issue of access to the NCIC.
[1] See Neb. Const. art. VII, § 2, § 3; School Dist. No. 8 v.State Board of Education, 176 Neb. 722, 127 N.W.2d 458 (1964).
In part, those federal regulations provide that "[c]riminal history record information contained in any Department of Justice criminal history record information system will be made available . . . for use in connection with licensing or local/state employment or other uses only if such dissemination is authorizedby [f]ederal or state statutes and approved by the Attorney Generalof the United States." 28 C.F.R. § 20.33 (a) (1994) (emphasis added); See also Pub.L. 92-544, § 201 (October 25, 1972) (found at28 U.S.C. § 534 note). Based upon an interpretation of the federal court decision issued in Menard v. Mitchell, 328 F. Supp. 718
(D.D.C. 1971), aff'd in part, rev'd in part on other grounds subnom. Menard v. Saxbe, 498 F.2d 1017 (D.C. Cir. 1974), the U.S. Attorney General views the language of the federal regulation as a "narrow interpretation of State authority to receive criminal history information from the FBI for employment or licensing use." 3 U.S. Op. Off. Legal Counsel 55, 56 (January 22, 1979).
Insight as to how the U.S. Attorney General might rule on the State Board's request to obtain criminal history information on potential teachers can be gleaned from an opinion issued by the U.S. Attorney General to the FBI Director in response to an inquiry by the State of Florida. See Id. At issue in that opinion was whether the Florida Board of Bar Examiners was authorized to receive criminal history information maintained by the FBI's NCIC for the purpose of investigating the character of applicants for admission to the Florida bar. Under the facts as presented to the U.S. Attorney General, no state statute existed which authorized criminal history exchanges between the Florida Board of Examiners and the FBI. Rather, the Florida Board had been established by rules of the Florida Supreme Court pursuant to the court's inherent judicial authority to regulate members of the legal profession. By rule of the court, the Board of Examiners was authorized to investigate the character and moral fitness of potential attorneys. Under regulations issued by the Board of Examiners, applicants were required to submit to fingerprinting so that their criminal histories could be reviewed.
On the basis of those facts, the U.S. Attorney General advised the FBI that it could not provide criminal history information to the Florida Board of Bar Examiners. Id at 55. The Attorney General concluded that federal law permitted "a State board of bar examiners to obtain criminal history information from the FBI only when a statute expressly authorized it to fingerprintapplicants or to exchange criminal history information with otheragencies." Id. at 56 (emphasis added). This conclusion was reached despite the State of Florida's argument that the "rules of the Florida Supreme Court requiring bar applicants to be fingerprinted are the full equivalent of a statute because that court has authority superior to the legislature in this area." Id.
Furthermore, the U.S. Attorney General found that "[h]ad Congress wished to permit dissemination authorized by judicial or administrative rule, it could have easily done so by having [Pub.L. 92-544, § 201] read `by law' instead of `by statute.'" Id.
Clearly, the U.S. Attorney General's Office strictly construes the federal legislation and regulation authorizing the dissemination of criminal history information through the Federal Bureau of Investigation's NCIC. We believe that the constitutional and statutory framework surrounding the State Board's power to license prospective Nebraska teachers present factual circumstances which are distinguishable from the NCIC access request made by the State of Florida. Therefore, by separate letter, a copy of which is enclosed for your review, Attorney General Stenberg has contacted the Director of the Federal Bureau of Investigation[2] to seek a definitive ruling on this matter. Once a response to that letter is received, it will be immediately forwarded to you.
Should the State Board determine to pursue specific legislation on this matter in the interim, we suggest that it review existing Nebraska statutes which have previously been approved by the federal government to allow access to the NCIC. Those statutes are found at Neb. Rev. Stat. § 9-1,104 (Cum. Supp. 1994) (requiring fingerprinting and criminal history check of applicants for bingo and other gambling operators); Neb. Rev. Stat. § 53-125 (Cum. Supp. 1994) (forbidding issuance of liquor license to any individual who has been convicted of or plead guilty to certain felony or misdemeanor offenses); and Neb. Rev. Stat. § 71-3205
and § 71-3206 (1990) (requiring the State Patrol to conduct investigation of all applicants for private detective licenses).
Sincerely,
 DON STENBERG Attorney General
 Lauren L. Hill Assistant Attorney General
Enclosure
Approved by:
Don Stenberg
Attorney General
[2] Pursuant to 28 C.F.R. § 0.85 (j), the U.S. Attorney General's power and authority to approve and conduct exchanges of identification records to officials of state governments has been delegated to the Director of the Federal Bureau of Investigation.